IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| WHITE KNUCKLE GAMING, LLC, a Utah limited liability company,<br><br>                    Plaintiff,<br>v.<br><br>ELECTRONIC ARTS INC., a Delaware corporation.<br><br>                    Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>Case No. 1:15-cv-150-JNP-PMW<br><br>District Judge Jill N. Parrish |

Before the court are two motions filed by defendant Electronic Arts Inc. ("EA"). First, is a Motion to Dismiss Based on Unpatentability Under 35 U.S.C. § 101 (the "Motion to Dismiss"). (Docket 16). Second, is a Motion to Strike, or in the Alternative Dismiss, Plaintiff's Willfulness and Agency Allegations (the "Motion to Strike"). (Docket 18). The court held oral argument on the motions on April 8, 2016. At the conclusion of the hearing, the court took the motions under advisement. After considering the written submissions[1] and the arguments presented at the hearing, the court issues this Memorandum Decision and Order GRANTING Defendant's Motion to Dismiss. Given this ruling, the Motion to Strike is moot.

## INTRODUCTION

White Knuckle Gaming, LLC ("White Knuckle") brought this action alleging that EA had infringed on its Patent No. 8,545,575 (the "Patent"). The process Patent at issue allows a gaming company to update the software parameters of sports video games to reflect recent real-life occurrences. These parameters would include things like performance statistics, athletes' appearances, and uniform appearances. The parameters are updated by the gaming company on a

---

[1] The court also notes that it reviewed the supplemental authority and responses thereto. (Dockets 32–36).

regular basis and are incorporated into the video game's software via a network. The actual game-play of the sports video game would therefore reflect recent real-world developments. The game would, for example, reflect any recent changes in a sports team's uniforms.

EA brings this motion to dismiss, arguing that the Patent is invalid because it is aimed at an unpatentable abstract idea. Specifically, it argues that the Patent is directed towards the abstract idea of updating software. White Knuckle argues that the Patent is not aimed at an abstract idea, but rather the Patent allows "updates to the machine-implemented video games [that] change the performance of the machine-implemented video game itself and improve how the video game itself performs."

## LEGAL STANDARDS

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The Federal Circuit has explained that while Federal Circuit law governs the substance of the patent claims, regional circuit law governs the general procedural standards for Rule 12(b)(6) motions. *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362 (Fed. Cir. 2015). And under Tenth Circuit law, a plaintiff must plead both a viable legal theory and enough factual matter that, taken as true, makes the claim for relief plausible on its face. *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008). The court must accept the "well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *David v. City & County of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1996). But the "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The issue of invalidity under 35 U.S.C. section 101, which is the basis of this motion, presents a question of law.[2] *Accenture Global Servs. GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1340–41 (Fed. Cir. 2013). Although every issued patent is presumed to have been issued validly, a district court may consider patent validity under Section 101 at the pleadings stage. *See buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350 (Fed. Cir. 2014) (affirming a district court's finding of invalidity under Section 101 at the pleading stage).

It is not always necessary to construe the patent claims before determining subject matter eligibility. *See Bancorp Services, L.L.C. v. Sun Life Assurance Co. of Canada*, 687 F.3d 1266, 1273–74 (Fed. Cir. 2012). In this case, neither party has sought the construction of any of the terms in the Patent. And both parties agree that claim 1 is a representative claim. This lack of dispute regarding construction demonstrates that it is appropriate to address validity under Section 101 at this stage of the proceedings.

## ANALYSIS

EA argues that the Patent is invalid because the Patent's claims are directed to an unpatentable abstract idea. Because all of White Knuckle's causes of action are based on the allegedly invalid patent, EA argues that the Complaint should be dismissed with prejudice.

The categories of patent-eligible subject matter are set forth in 35 U.S.C. section 101, which provides:

> Whoever invents or discovers any new and useful process, machine, manufacture, or composition of any matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title.

35 U.S.C. § 101. "Section 100(b) of the Patent Act defines the 'process' category tautologically, stating that: 'the term process means process, art or method, and includes a new use of a known

---

[2] The court notes that it found the analysis in *Open Text S.A. v. Alfresco Software Ltd.*, to be persuasive and helpful in evaluating this case. 2014 WL 4684429 (N.D. Cal. September 19, 2014).

process, machine, manufacture, composition of matter, or material.'" *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366 (Fed. Cir. 2011) (quoting 35 U.S.C. § 100(b)).

"The Supreme Court has 'long held that this provision contains an implicit exception: Laws of nature, natural phenomena, and abstract ideas are not patentable'" *OIP Techs.*, 788 F.3d at 1363 (quoting *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S. Ct. 2107, 2116 (2013)). The Supreme Court detailed a two-part test for evaluating claims of patent eligibility in *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014). First, the court must "determine whether the claims at issue are directed to a patent-ineligible concept" such as an abstract idea. *Id.* If so, the court must then "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Id.* (quoting *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 132 S. Ct. 1289, 1298 (2012)).

**I.      The Patent claims are directed to a patent-ineligible concept.**

The court must first determine whether the Patent claims are directed to a patent-ineligible concept. The Supreme Court has repeatedly held that "[t]he 'abstract ideas' category embodies 'the longstanding rule that '[a]n idea of itself is not patentable'" *Id.* at 2355 (quoting *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)). And "[a]n abstract idea does not become nonabstract by limiting the invention to a particular field of use or technological environment, such as the Internet." *Intellectual Ventures, LLC v. Capital One Bank*, 792 F.3d 1363, 1366 (Fed. Cir. 2015). The Supreme Court has invalidated multiple patents on this basis. *See, e.g.*, *Bilski*, 561 U.S. 593 (2010) (holding that risk hedging was an abstract idea); *Alice*, 134 S. Ct. 2356 (holding that patents drawn to computerize the use of a third-party intermediary was an attempt to patent an idea).

The Patent claims in this case fall within the category of abstract ideas. The claims recite a simple internet-based method of updating the software of sports video games. This is an abstract idea—updating software in sports video games—and it is performed on a conventional computer, server, and network. Indeed, the claims do not explain or limit how the computer or server would be programmed, or how the network would be configured. Rather, the claims include diagrams and descriptions of generic computers and networks. The claims simply recite these conventional components performing basic, intended functions, in a routine, conventional manner.

It is a longstanding business practice in the video game industry to update sports video games parameters to reflect real-world developments. Indeed, the patent concedes that "video game producers typically produce professional sports video games" distributed on such video game media, and the corresponding video game parameters, "once per year." The Patent also states that sports video games have long included "parameters[] stored on the video game medium" to simulate "actual leagues with correct teams, hometowns[,]" "realistic stadiums," "specific athletes" and "uniforms." The Patent purports to improve this practice by storing the updated software on a "network server," and coupling a game machine to the network server that downloads the data. Thus, the Patent claims do nothing more than recite the performance of a long-established business practice—re-writing software to produce an updated version—using a general purpose computer and the internet. But as the Federal Circuit has explained, general uses of the internet "to perform an abstract business practice (with insignificant added activity)" does not pass muster under § 101. *DDR Holdings, LLC v. Hotels.Com, LP*, 773 F.3d 1245, 1258 (Fed. Cir. 2014).

The fact that the Patent is limited to the specific field of use of sports video games, or that it is performed over the internet, makes no difference. The Supreme Court has explained that "the prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of the [abstract idea] to a particular technological environment." *Alice*, 134 S. Ct. at 2358. Accordingly, the court holds that the Patent is directed to a patent-ineligible abstract idea.

## II. There are no additional elements that transform the nature of the claims into patent-eligible material.

Having determined that the Patent claims are directed to an abstract idea, the court must "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Id.* (quoting *Mayo*, 132 S. Ct. at 1298). In both *Alice Corp.* and *Mayo*, the Supreme Court described this second step as "a search for an 'inventive concept'—*i.e.*, an element or combination of elements that is sufficient to ensure the patent in practice amounts to significantly more than a patent upon the [abstract idea] itself.'" *Id.* at 2355 (quoting *Mayo*, 132 S. Ct. at 1294).

The Supreme Court expressly held that a claim directed to an abstract idea does not become patent eligible under Section 101 by "merely require[ing] generic computer implementation." The Supreme Court explained that the claims in *Alice* lacked such an inventive concept because they did "not, for example, purport to improve the functioning of the computer itself" or "effect an improvement in any other technology or technical field." Instead, the claims only applied the abstract idea "using some unspecified, generic computer."

The Patent claims in this case suffer from the same defect. The Patent claims are directed to the abstract idea of updating software parameters. They do not become patent-eligible by merely requiring "generic computer implementation" via a network. As explained above, the

6

gaming industry has a longstanding practice of updating sports video games' parameters to reflect real life. The Patent's only improvement is that the software updates are able to happen more frequently and quickly because they are done via the internet. But that is accomplished using a network in the normal manner.

This is exactly the type of "wholly generic computer implementation [that] is not generally the sort of 'additional featur[e]' that provides any 'practical assurance that the process is more than a drafting effort designed to monopolize the [abstract idea] itself.'" *Alice*, 134 S. Ct. at 2358 (quoting *Mayo*, 132 S. Ct. at 1297). Indeed, the Federal Circuit has recently explained that "claiming the improved speed or efficiency inherent with applying the abstract idea on a computer" does not provide a sufficient inventive concept." *Intellectual Ventures I, LLC v. Capital One Bank*, 792 F.3d 1363, 1367 (Fed. Cir. 2015). Accordingly, the court holds that the Patent has no additional elements that transform the nature of the claims into patent-eligible material.

## CONCLUSION

The court holds that the Patent is drawn to a patent-ineligible abstract idea, and merely requiring generic computer implementation fails to transform that idea into a patent-eligible invention. Accordingly, EA's Motion to Dismiss is GRANTED, and the Motion to Strike is moot.

Signed June 2, 2016.

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge